**FAMILY AND SOCIAL SERVICES ADMINISTRATION and State Personnel Department, Appellants-Respondents,**

v.

**Ronald BOISE, Appellee-Petitioner.**

No. 01A02–9509–CV–522.

Court of Appeals of Indiana.

April 9, 1996.

Publication Ordered July 1, 1996.

Pamela Carter, Attorney General, Sabra A. Weliever, Deputy Attorney General, Indianapolis, for appellants.

Travis Holdman, Lautzenheiser, Myers & Holdman, Ossian, for appellee.

## OPINION

ROBERTSON, Judge.

The Family and Social Services Administration and the State Personnel Department (the State) appeal an order of the trial court which set aside, on judicial review, a decision of the State Employees' Appeals Commission (the Commission). The State essentially claims that the evidence is sufficient to support the decision of the Commission and that the trial court acted beyond its authority in its grant of relief. We reverse.

The evidence reveals that Boise and others (Boise) sought an upgrade in their work classifications and a retroactive application of the reclassifications. The State denied their requests, and the matter eventually proceeded to the Commission for a hearing. The hearing officer of the Commission heard evidence and submitted findings of fact and conclusions of law which upheld the denial. The hearing officer also submitted a recommendation with a resolution. The Commission adopted the decision, the recommendation, and the resolution. Boise then petitioned for judicial review of the agency decision. On review, the trial court set aside the decision of the agency. The State now appeals the order and relief the trial court granted in favor of Boise.

On review of administrative agency action, we stand in the position of the trial court and conduct our review solely to determine whether the agency had jurisdiction over the subject matter of the case, whether the agency's order was based upon proper procedure and supported by substantial evidence, whether the decision was arbitrary or capricious, or whether the decision was in violation of any constitutional, statutory, or legal principles. *Board of Registration for Land Surveyors v. Bender,* 626 N.E.2d 491, 495 (Ind.Ct.App.1993). Both this court and the trial court are prohibited from reweighing the evidence and reassessing witness credibility; we must accept the facts as found by the administrative body. If an administrative determination was based upon substantial evidence and did not violate any constitutional, statutory, or legal principle, it will be affirmed. *Id.* Action of an administrative agency is arbitrary and capricious only where there is no reasonable basis for the action. *Id.* The relevant inquiry is whether there is substantial evidence of probative value to support the agency's determination. *Id.*

The trial court entered the following findings of fact and conclusions of law, in pertinent part:

### FINDINGS OF FACT

1. Petitioner, Ronald Boise, is, and has been at all times pertinent to this matter, employed by the State of Indiana as Director of the Adams County Office of the Division of Family and Children, formerly the Department of Public Welfare. He is a merit employee as defined by I.C. 4-15-2-3.8 and a "regular employee" of the State for purposes of 33 IAC 1.1.1, et seq. All other Petitioners in this matter are similarly situated.

2. On February 21, 1992, the said Petitioner filed a grievance under I.C. 4-15-2-35 alleging that his position should be reclassified to a higher skill level under the State Classification System due to an increase in the number of cases handled by his county welfare office. His grievance was denied by the Secretary of Family and Social Services on March 13, 1992. Petitioner appealed to the State Personnel Director who also denied the grievance.

Petitioner then appealed to the State Employees' Appeals Commission. At this point the grievances of 39 other similarly situated County Department of Public Welfare Directors were consolidated for hearing with that of Ronald Boise. The Commission's Hearing Officer conducted a hearing on June 1, 1993, and on July 28, 1993, entered Findings of Fact and Recommendation which was adopted unanimously by the Commission along with a Resolution which denied and closed the appeal.

3. Facts of the case that are relevant to a determination of this matter are as follows:

a. In 1988 the State Personnel Department reviewed the existing classification plan and developed a new plan for county welfare directors. The new plan was based upon the size of the counties' case-

loads in April, 1988. The plan was adopted on June 28, 1988, and assigned four classification salary levels defined as follows:

| Caseloads of | 200– 999 | PAT II |
| Caseloads of | 1,000– 2,099 | PAT I |
| Caseloads of | 2,100– 6,999 | ESM VII |
| Caseloads of | 7,000– 9,999 | ESM VI |

b. The 1988 Plan resulted in upgrades for most of the 92 county welfare directors and provided for two county director positions, those for Elkhart County and for LaPorte County, to be downgraded upon attrition, i.e. when the incumbents would leave their positions, because the existing salaries of the current directors exceeded the classification level in which their caseloads would have otherwise placed them.

c. The Elkhart County Director position was downgraded to a lower salary level when the position was vacated by the person holding the position when the plan was adopted. The parties have stipulated that [contrary to misstatements of witness, Keith Beesley, at the Commission's hearing which was the basis for the Hearing Officer's Finding of Fact Number 6 and Number 8] in fact the caseload of the Elkhart County Department did not meet the level necessary to remain at the classification level assigned in 1988.

d. The LaPorte County Director position was vacated in 1991. After an initial attempt to reclassify the position down to an ESM VII and the refusal of the person selected as the replacement director to accept the position if downgraded, the Commissioner of the State Department of Public Welfare withdrew the request to downgrade as called for in 1988 and asserted that, since 1988, the caseload had increased in LaPorte County to meet the requirements of an ESM VI classification level.

The State Personnel Department agreed with the caseload determination of the Department of Public Welfare and, on June 10, 1991, State Personnel Director, Sheriee C. Moore, advised the Department of Public Welfare by letter that the LaPorte County Director position would remain at the ESM VI level. Caseload was the only consideration cited by the State Personnel Director for her Department's decision.

e. The State Personnel Department's decision regarding LaPorte County in June, 1991, was the last application of the 1988 Plan before the Petitioner, Ronald Boise, requested reclassification to a higher skill level on February 21, 1992.

f. In February and March of 1992 the Respondents refused to apply the 1988 Plan to the Petitioners and continue to do so. The Petitioners are prejudiced by such refusal.

4. Paragraphs 6 and 8 of the Hearing Officer's Findings of Fact have been vitiated by the parties' Stipulation and Entry filed with this Court on March 29, 1994.

5. The record is devoid of any evidence that there was any stated basis for the State Personnel Department's decision regarding the LaPorte County Director's classification other than caseload applied to the 1988 Plan. The Hearing Officer's finding in paragraph 7 that such was the "primary" reason for the Department's decision is not supported by the facts; the size of the caseload was the only reason stated. The Hearing Officer's finding in paragraph 7 regarding the actions and considerations of Family and Social Services, as distinguished from the State Personnel Department's decision, is supported by evidence.

6. There is no evidence that the 1988 Classification Plan and Salary Schedule, as enunciated, approved by the Governor's Office, and promulgated, was based upon any considerations other than caseload size. The Hearing Officer's finding numbered 17 is completely without basis in fact material to the Petitioners' appeal when it states: "These Findings only state that caseload size is not the sole or dispositive factor to be considered in making decisions about the proper classifications and salary levels of county welfare directors."

7. Any Finding of Fact herein deemed to be a Conclusion of Law shall be a Conclusion of Law.

## CONCLUSIONS OF LAW

\* \* \*

3. Although this Court must determine whether the Hearing Officer's Findings and Recommendations were supported by substantial evidence, this Court may not reweigh the evidence. The interpretation and application of the 1988 Classification Plan, however, is a question of law and not of fact and the Court need not defer to the agency or the Hearing Officer's findings on questions of law.

\* \* \*

5. In establishing the 1988 Classification Plan and applying it consistently twice thereafter, once to confirm a downgrade in classification and once to reverse a downgrade in classification, the Respondents met due process requirements for ascertainable standards, well stated and followed as late as June, 1991. In refusing to apply those standards to the Petitioners, the respondents have acted arbitrarily and capriciously. No other plan or standards have been enunciated either before or after the Petitioners' grievances were filed.

6. The Respondents are attempting to abandon the classification plan as it exists without establishing an equally ascertainable plan and to determine the classification of county welfare directors on a case by case basis, exercising uncontrolled discretion in the application of indeterminable standards to facts the relevance of which would be known but to them. Such actions are so classically arbitrary and capricious as to be Kafkaesque. The Hearing Officer's Findings of Fact numbered 7, 9, 10, 11, 12, 13, 14, 15, 16, and 17 and most of the Hearing Officer's Discussion is little more than an apologia for such an approach.

7. Respondent's brief does not dispute that the 1988 Classification Plan was based solely on caseload but argues that the 1988 Plan was not intended to be applied prospectively to new caseload statistics. Respondents argue that the Plan was intended to be fixed and immutable, based upon caseload statistics discrete to April, 1988.

This argument is not supported by the evidence because, in fact, the Respondents have on two occasions since 1988 applied new caseload statistics to the 1988 Plan and have acted according to the results of that application. The Petitioners have every right to be dealt with comparably. To act inconsistently without an ascertainable standard or plan is arbitrary and capricious as it is to act in disregard to an ascertainable standard or plan.

8. Petitioners assert the Hearing Officer's Finding of Fact numbered 4 is not supported by evidence. The Respondents argue to the contrary citing the testimony of Keith Beesley. The Finding summarizes the history of the development of the 1988 Plan and is supported by Mr. Beesley's testimony but the history of the Plan has no relevance to the application of ascertainable standards to facts. The Plan is clear and unambiguous. There is no need of regulatory history to explicate it nor is there need to justify the adoption of the Plan. The record is also clear from Mr. Beesley's testimony that the Governor's Office rejected his counsel as to what he deemed advisable regarding a classification system and, instead, adopted a system based solely on caseloads.

9. Petitioners assert that the Hearing Officer's Findings of Fact numbered 9 and 10 are not supported by the evidence and that 11 is "nonsensical" in light of the evidence. The Findings in question deal with whether "monitoring systems" have been established by the Respondents for "automatic review" of caseloads in relation to he existing classification plan. The Finding numbered 11 finds that the Respondent, Family and Social Services, "does track caseload sizes in all counties on a monthly basis, but uses these reports only as management tools for determining appropriate allocations of scarce resources of time and money."

The parties' dispute regarding these Findings is semantic in nature. There is evidence on the record to support both interpretations and it would be an improper reweighing of the evidence for the Court to render its interpretation. These

Findings are supported by substantial evidence but for the most part are immaterial to the issues before the Commission and this Court.

What is found by the Hearing Officer and is not disputed by the parties is that the Respondent, Family and Social Services, has available at all times monthly caseload statistics from all counties which is all that is necessary to have acted upon the Petitioners' grievances or earlier requests for review of caseloads and classifications.

This fact is relevant and material to this matter and supplies the final element to the Petitioners' case. The Respondents have had the Plan, they have at all times had the only necessary and relevant facts to apply to the Plan, and they have, upon request for application of the Plan, arbitrarily and capriciously refused to do so to the detriment and prejudice of the Petitioners.

* * *

12. The Hearing Officer's Discussion goes on in more detail about whether the caseload alone is the best measure to be applied and the absence of a mechanism for automatic changes. The final paragraph of the discussion states:

> ... what has been determined by the evidence presented in this appeal is that the total number of cases being handled by a county welfare office should not be the sole determinative factor in assigning salary levels to county welfare directors.

This clearly betrays the fact that the Petitioners had their appeal to the Commission hijacked and diverted from an appeal to a rule-making hearing. Not only were the rules of the hearing changed but the purpose was also changed, all without notice.

* * *

We begin our examination with an analysis of the trial court's application of the scope of review. The trial court noted that it may not reweigh the evidence but also stated that the interpretation and application of the classification plan is a question of law, not a question of fact, and the court therefore need not defer to the agency on the matter.

What the trial court has done, however, is decide a question of fact, that is, exactly what elements combine to form the State's classification scheme, in the guise of a question of law, which is the application of the classification scheme to the undisputed facts of the case. The trial court acknowledges the State's contention that it never intended the 1988 reclassification plan to be applied prospectively but only intended it be applied in 1988. The Commission decided as much through its hearing officer. Substantial evidence, in the form of testimony about that intent and of the history of reclassification, supports that determination. The State admittedly consulted the 1988 Plan in the LaPorte and Elkhart County instances, but to decide that those consultations are dispositive, in the review of the agency action, is to reweigh the evidence.

Further, the trial court concluded that the record is devoid of any evidence that there was any "stated" basis for the LaPorte decision other than the size of the caseload. The findings of the hearing officer acknowledged that caseload had been the primary reason for the decision but that other reasons had existed, as well. The record reveals that the sought-after candidate for the position declined to accept it and that the State reclassified the position, in part, as an incentive to the candidate to accept the position (R.405). The record also reveals that the State based the reclassification "on a number of different factors," including staff size, although caseload was the primary factor (R.340). The determination of the hearing officer is supported by substantial evidence, and the trial court again reweighed the evidence when it reached a conclusion contrary to that of the Commission.

The trial court also determined that the hearing officer's finding of fact, that the State has not considered only caseload size in its decisions on the classifications of county welfare directors, was vitiated by the stipulation of the parties. The stipulation, however, affected only the Elkhart County matter. As

just noted, the evidence in connection with the LaPorte matter supports, with substantial evidence, the determination that the State has considered subjects other than caseload in its reclassification decisions.

The above analysis sufficiently addresses matters the trial court raised in finding number 8 and conclusions number 8 and 12. These paragraphs deal with whether or not the hearing officer appropriately determined that the caseload size is not the only factor to be considered or that the State never intended the 1988 reclassification Plan to be used in the future. Those determinations are supported by substantial evidence, and the trial court erroneously decided otherwise.

The trial court also determined that the State had caseload statistics available to it and arbitrarily and capriciously refused to apply them. Inasmuch as substantial evidence supports the determination that caseload statistics are not the only factor to be considered, the actions of the State are not arbitrary and capricious.

The trial court's conclusion number 10 is not set out above. The paragraph states that two of the hearing officer's finding of fact are irrelevant. One of those findings related that the State reviews matters of classification and salary every five to seven years and makes adjustments in criteria considered and methods of measuring those criteria based upon changes in the data available at the time of the review. The other of the findings relates that the State has never made changes in the classification or salary levels automatically based upon fluctuations in any particular variable. These findings are not irrelevant because they address the intent of the State with regard to use the 1988 reclassification Plan. The Commission could consider such matters.

The trial court also concluded that two of the hearing officer's findings impermissibly placed a burden upon Boise which is not required by law. The decision of the Commission is supported by substantial evidence, however, so any superfluous statements related to this matter did not prejudice Boise.

■ In its decision on judicial review, the trial court has taken facts piecemeal and has enunciated what it believes is the classification scheme of the State but has criticized the Commission when it examined the facts and reached its own decision on the matter. The proper place for the decision was with the Commission.

In its conclusion number 6, the trial court lamented that the State has attempted:

to determine the classification of county welfare directors on a case by case basis, exercising uncontrolled discretion in the application of indeterminate standards to facts the relevance of which is known only to them.

As noted, the determination of exactly what constitutes the reclassification scheme is a matter of fact to be decided by the Commission. The Commission was authorized to decide that the classification scheme is decided on a case by case basis. The references to "uncontrolled discretion" and "indeterminate facts" are yet another attempt to reweigh the evidence.

The decision of the Commission is supported by substantial evidence. We therefore reverse the judgment of the trial court.

Judgment reversed.

BAKER and STATON, JJ., concur.

### ORDER

This Court having heretofore handed down its opinion in this matter marked "Memorandum Decision, Not for Publication"; and

The appellees, by counsel, having thereafter filed their Motion to Publish Opinion, this Court having issued its Order requiring the appellants to show cause why said opinion should not be published and the appellants having filed their Response to Court's Order of June 5, 1996 Regarding Publication of Decision, which said Motion and Response are in the following words and figures, to-wit:

(H.I.)

And the Court, having examined these matters, and being duly advised, now finds that the appellees' Motion to Publish Opinion should be granted and this Court's opinion in this appeal should now be ordered published.

759

IT IS THEREFORE ORDERED as follows:

The appellees' Motion to Publish Opinion is granted and this Court's opinion heretofore handed down on April 9, 1996 marked "Memorandum Decision, Not for Publication" is now ordered published.