**In the Matter of James TAYLOR and Janet Taylor, Appellants–Plaintiffs,**

v.

**INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, Appellee–Defendant.**

No. 49A02–9801–CV–11.

Court of Appeals of Indiana.

Sept. 30, 1998.

Rehearing Denied Nov. 10, 1998.

Lawrence T. Newman, Indianapolis, for Appellants–Plaintiffs.

Jeffrey A. Modisett, Attorney General, Rachel Zaffrann, Deputy Attorney General, Indianapolis, for Appellee–Defendant.

## OPINION

HOFFMAN, Judge.

Appellants-plaintiffs James and Janet Taylor ("the Taylors") appeal from the trial court's judgment upholding the revocation of their foster family home license by the Indiana Family and Social Services Administration ("FSSA"). The relevant facts appear below.

The Taylors were awarded a foster family home license in 1987 by the Marion County Office of Family and Children ("OFC"), a division of the Indiana Division of Family and Children, which in turn is a division of FSSA. In February of 1994, a foster parent complained to OFC that Janet had allegedly struck a foster child who was temporarily under the Taylors' care. OFC received a second physical discipline complaint about Janet in May of 1994. Janet denied the first allegation but admitted to the second allegation of physical discipline, which is prohibited under OFC policy. On June 1, 1994, the Taylors signed a contract with OFC in which they agreed to refrain from using corporal punishment on foster children in their care and to attend a training session on discipline. Under the terms of the contract, OFC could revoke the Taylors' foster care license in the event of a subsequent corporal punishment complaint against them. The Taylors completed the discipline training session in conjunction with their mandated yearly foster care training.

In early 1995, a social worker from a hospital treating one of the Taylors' foster children filed complaints against Janet for allegedly failing to meet the child's emotional needs and for allegedly missing scheduled appointments to treat the child's medical condition. The Family Connection Center also filed a complaint against Janet for allegedly making an insensitive remark to a foster child and for allegedly "yanking" and "jerking" the child. The Taylors' OFC caseworker, Deanna Cox, expressed her concerns regarding Janet's ability to fulfill the emotional needs of the Taylors' foster children to her supervisor, Debra Blume, and to the caseworker responsible for placing children in the Taylors' home, Angela Coulon.

On March 3, 1995, Coulon visited the Taylors' home and reviewed the above concerns with Janet. Coulon advised Janet that she and her family would be required to complete a "home-based nurturing program"; Coulon further advised Janet that no more foster children would be placed in her home unless the Taylors participated in the program. Coulon gave Janet a pamphlet describing the nurturing program and told her to schedule an appointment to discuss the program.

On March 29, 1995, Janet met with Coulon and Blume at the OFC. Coulon and Blume advised Taylor that if she failed to participate in the program, OFC would no longer use her home as a foster home and would allow her license to remain open until the last foster child could be removed. The Taylors did not participate in the nurturing program, and the last foster child was removed from their home on August 8, 1995. In a letter dated September 27, 1995, OFC recommended to FSSA that the Taylors' foster care license be revoked pursuant to 470 I.A.C. § 3–1–3(a): "Foster parents shall be mature individuals who are capable of exercising and do exercise good judgment in the handling of a child." In a letter dated February 8, 1996, FSSA's Division of Family and Children informed the Taylors that the agency was revoking their foster family home license "based upon non-compliance with the Indiana Licensing Law [IND. CODE § ] 12–17.4–4–31" and 470 I.A.C. § 3–1–3.

The Taylors appealed FSSA's action, and a hearing was held before an administrative law judge ("ALJ") on May 9, 1996. On June 14, 1996, the ALJ issued her findings of fact and decision, which upheld FSSA's revocation of the Taylors' license. At the Taylors' request, FSSA conducted an agency review of the ALJ's decision on July 23, 1996. On August 9, 1996, FSSA issued a notice of final agency action, which affirmed the ALJ's decision. The Taylors filed a petition for judicial review on September 11, 1996. The trial court heard oral arguments on May 28, 1997, and issued its findings of fact and conclusions

of law on September 11, 1997; the trial court's judgment sustained FSSA's revocation of the Taylors' license. The Taylors now appeal.

The Taylors raise five issues for review; however, we need only address the following issues:

(1) whether the trial court exceeded its scope of judicial review of FSSA's action;

(2) whether the trial court erred by determining that IND. CODE § 12–17.4–4–31 does not provide the exclusive bases for FSSA to revoke a foster family home license; and

(3) whether the trial court erred by determining that 470 I.A.C. § 3–1–3 is neither vague on its face nor as applied.

■■ " 'When reviewing the decision of an administrative agency, this [C]ourt stands in the same position as the trial court.' " *Family and Social Services Administration v. Calvert,* 672 N.E.2d 488, 492 (Ind.Ct.App. 1996), *trans. denied,* 683 N.E.2d 591 (Ind. 1997), quoting and citing *SSU Fed'n Teachers v. Board of Directors,* 656 N.E.2d 832, 835 (Ind.Ct.App.1995). "We may not retry the facts or substitute our judgment on factual matters for that of the agency." *Calvert,* 672 N.E.2d at 492. This Court's review of an agency's decision cannot be considered *de novo* in the sense of a complete retrial of the issues involved; rather, we must "go no further than to examine the propriety of the agency's facts as the agency found them and the propriety of the agency's order in light of the facts found." *Baseball, Inc. v. Dept. of State Revenue,* 672 N.E.2d 1368, 1375 (Ind. Ct.App.1996), *trans. denied.* Finally, both trial and appellate courts are bound by the agency's findings of fact "if those findings are supported by substantial evidence." *Crutcher v. Dabis,* 582 N.E.2d 449, 450 (Ind. Ct.App.1991), *trans. denied.*

■ In the case at bar, the trial court entered its own findings pursuant to IND. CODE § 4–21.5–5–14(c) ("[t]he court shall make findings of fact on each material issue on which the court's decision is based" in reviewing an agency action) and Ind. Trial Rule 52(A)(2), which requires a court to make special findings of fact without request "in any review of actions by an administra-

tive agency." Instead of restricting its review of FSSA's action to the ALJ's 19 findings and the evidence upon which those findings were based, the trial court inexplicably reweighed evidence, reassessed the credibility of witnesses, and entered 30 findings of its own. Because the trial court exceeded its scope of review with respect to the ALJ's findings, we must ignore its findings of fact, conclusions of law, and judgment regarding FSSA's revocation of the Taylors' license.

This Court is further required to disregard the trial court's findings, conclusions, and judgment because, as noted above, we must stand in the same position as the trial court in reviewing FSSA's action. *Calvert,* 672 N.E.2d at 492. Therefore, we must "limit our review to determine whether the agency had jurisdiction over the subject matter of the case, whether the agency's order was based upon proper procedure and supported by substantial evidence, whether the decision was arbitrary or capricious, or whether the decision was in violation of any constitutional, statutory, or legal principles." *Family and Social Services Administration v. Boise,* 667 N.E.2d 753, 754 (Ind.Ct.App.1996), *trans. denied.* Under IND. CODE § 4–21.5–5–14(d)(1), a court may also determine if an agency's action is "an abuse of discretion, or otherwise not in accordance with law." Finally, the party asserting invalidity of an agency action bears the burden of demonstrating that invalidity. *See* IND. CODE § 4–21.5–5–14(a). The Taylors do not claim any error regarding jurisdiction or procedure, thereby limiting this Court's review to the propriety of FSSA's decision.

■■ In reviewing the ALJ's findings of fact, we note that " 'findings must be specific enough to provide the reader with an understanding' " of the ALJ's reasons, based on the evidence, for her " 'finding of *ultimate fact.*' " *Moore v. Family and Social Services Administration,* 682 N.E.2d 545, 547 (Ind.Ct. App.1997), quoting and citing *Perez v. United States Steel Corp.,* 426 N.E.2d 29, 33 (Ind. 1981) (emphasis in original). Throughout the findings in question, the ALJ noted that various witnesses "explained," "stated," or observed certain details. In *Perez,* our su-

preme court noted that statements of this kind are *"not* findings of basic fact in the spirit of the requirement." *Perez,* 426 N.E.2d at 33 (emphasis in original). "A finding of fact must indicate, not what someone said is true, but what is determined to be true, for that is the trier of fact's duty." *Moore,* 682 N.E.2d at 547. Because the ALJ failed to assert certain facts as required in reaching her decision, the findings must be considered deficient; consequently, the ALJ's decision "may not rest upon the inadequate findings." *Id.* Therefore, this cause must be remanded for proper findings of fact. *Id.*

Because the Taylors' cause must be remanded for proper findings, this Court need not review the ALJ's decision to determine if it was arbitrary or capricious, an abuse of discretion, or supported by substantial evidence. Of particular concern, however, is the ALJ's finding that the Taylors had not participated in a *discipline* training program "by the time of the hearing." The ALJ therefore determined that the Taylors did not exercise "good judgement" pursuant to 470 I.A.C. § 3–1–3(a) in "not participating in an in-service training on discipline." Both FSSA and the Taylors agree that they did, in fact, complete the *discipline* program; what remains at issue is the Taylors' willingness or ability to complete the *nurturing* program discussed above and whether their lack of participation constituted sufficient grounds to revoke their license under IND. CODE § 12–17.4–4–32 and 470 I.A.C. § 3–1–3(a). This Court can only presume that the ALJ's apparent confusion regarding the discipline and nurturing programs may simply be interpreted as a clerical error.

Because the ALJ may be tempted simply to reword her "findings" on remand, this Court considers it necessary to address the Taylors' contentions regarding the statutory bases for the revocation of their license. *See Moore,* 682 N.E.2d at 547. The Taylors first argue that IND. CODE § 12–17.4–4–31 "sets forth the sole legal grounds for the revocation of a foster family home license in Indiana." The statute reads as follows:

**12–17.4–4–31 Grounds for revocation of licenses**

Sec. 31. The following constitute sufficient grounds for revocation of a license:

(1) A determination by the division of child abuse or neglect (as defined in IND. CODE § 31–6–11–2.1) by the licensee.

(2) A criminal conviction of any of the following:

(A) A felony.

(B) A misdemeanor related to the health or safety of a child.

(3) A determination by the division that the licensee made false statements in the licensee's application for licensure.

(4) A determination by the division that the licensee made false statements in the records required by the division.

Because the Taylors did not violate any of the above provisions, they contend that FSSA is statutorily prohibited from revoking their license.

■■■ The Taylors offer no compelling authority to substantiate their claim that IND. CODE § 12–17.4–4–31 provides the only bases for FSSA to revoke foster family home licenses. Indeed, the statute does not contain words such as "only" or "exclusive" with respect to grounds for license revocation. "Courts are to examine and interpret a statute as a whole, giving words their common and ordinary meaning, and not overemphasize a strict, literal, or selective reading of individual words." *JKB, Sr. v. Armour Pharmaceutical Co.,* 660 N.E.2d 602, 605 (Ind.Ct.App.1996), *trans. denied.* Also, "[s]tatutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme." *Indiana Payphone Ass'n v. Indiana Bell Telephone Co.,* 690 N.E.2d 1195, 1199 (Ind.Ct.App.1997), *trans. denied.*

Under IND. CODE § 12–13–5–3(1), FSSA's Division of Family and Children may "[a]dopt rules under IND. CODE § 4–22–2 and take action that is necessary and desirable to carry out IND. CODE § 12–13 through IND. CODE § 12–19 and that is not inconsistent with IND. CODE § 12–13 through IND. CODE § 12–19." FSSA adopted 470 I.A.C. § 3–1–3 pursuant to its statutory authority and used this rule to revoke the Taylors' license in conjunction

with IND. CODE § 12–17.4–4–32, which reads as follows:

**12–17.4–4–32 Disciplinary sanctions**

Sec. 32. (a) A licensee shall operate a foster family home in compliance with the rules established under this article and is subject to the disciplinary sanctions under subsection (b) if the division finds that the licensee has violated this article or a rule adopted under this article.

(b) After complying with the procedural provisions in sections 21 through 24 of this chapter, the division may impose the following sanctions when the division finds that a licensee has committed a violation under subsection (a):

(1) Suspend the license for not more than six (6) months.

(2) Revoke the license.

 When interpreting statutes, this Court's "foremost objective is to determine and effect legislative intent." *JKB, Sr.*, 660 N.E.2d at 605 (citation omitted). "Statutes must be construed to give effect to legislative intent, and courts must give deference to such intent whenever possible." *Id.* "Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment." *Id.* Additionally, this Court must give considerable weight to FSSA's interpretation of its own statutes. *Indiana Payphone Ass'n,* 690 N.E.2d at 1199. A careful reading of IND. CODE §§ 12–17.4–4–31 and 32 clearly shows that the legislature did not intend for section 31 to provide the only grounds for FSSA to revoke foster family home licenses; indeed, it is inconceivable that the legislature enacted section 32 as a superfluous or meaningless statute. Section 32 specifically grants FSSA the authority to revoke a license if a licensee "has violated this article or a rule adopted under this article."

The Taylors claim that IND. CODE § 12–17.4–4–32 does not permit 470 I.A.C. § 3–1–3 to be used as a basis for license revocation because this rule is "outside the scope of the power conferred on FSSA by the legislature" and is inconsistent with IND. CODE § 12–17.4–4–31. In support of this assertion, the Taylors note that 470 I.A.C. § 3–1–3 and similar regulations concerning foster care were adopted by the legislature in 1946—

long before IND. CODE § 12–13–5–3 was enacted as an enabling statute in 1992.

 The Taylors' arguments are without merit. In 1945, the legislature granted the State Department of Public Welfare statutory authority to "administer or supervise all public child welfare services, including ... the licensing and inspection of all private child-caring agencies and supervision and inspection of all local public child-caring agencies, institutions and boarding homes ... [and] supervise the care of dependent and neglected children in foster family homes." *See* 1945 Ind. Acts 349 § 3(c). The Department was also granted authority to "make such rules and regulations and take such action as may be deemed necessary or desirable to carry out the provisions of this act and which are not inconsistent therewith." *See* 1945 Ind. Acts 349 § 3(f). The State Department of Public Welfare has since been renamed the Division of Family and Children; and 1945 Ind. Acts 349 has since been recodified as IND. CODE § 12–13–5–3; these two modifications cannot alter the substantive effect of the original statute. 470 I.A.C. § 3–1–3, which was adopted pursuant to 1945 Ind. Acts 349, remains effective with respect to both IND. CODE § 12–13–5–3 and IND. CODE § 12–17.4–4–32.

Furthermore, 470 I.A.C. § 3–1–3 is not inconsistent with IND. CODE § 12–17.4–4–31. As noted above, IND. CODE § 12–17.4–4–31 does not provide the exclusive grounds for revocation of a foster family home license. FSSA was empowered by IND. CODE § 12–13–5–3 to adopt rules that are "necessary or desirable to carry out IND. CODE § 12–13 through IND. CODE § 12–19"; IND. CODE § 12–17.4–4–32 allows FSSA to revoke the license of a licensee who violates an agency rule. 470 I.A.C. § 3–1–3(a) mandates that foster parents be "mature individuals who are capable of exercising and do exercise good judgment in the handling of a child." Revoking a license under this rule is not incompatible with IND. CODE § 12–17.4–4–31, but is simply a statutorily authorized alternative contemplated by IND. CODE § 12–17.4–4–32. The Taylors assert that an administrative agency cannot "expand the statutory grounds for revoking a license" by

regulation, but offer no authority to support this assertion.

Finally, the Taylors claim that the trial court erred by determining that 470 I.A.C. § 3–1–3 is neither vague on its face nor as applied. As noted above, this Court must disregard the trial court's review and remand the cause for proper findings, but we deem it to be in the best interest of both parties for this Court to resolve the issue to facilitate future proceedings. The Taylors correctly assert that "[r]egulatory standards should be stated with sufficient precision to provide those having contract with the agency fair warning of the criteria by which they will be judged." *Yater v. Hancock County Board of Health*, 677 N.E.2d 526, 530 (Ind.Ct.App. 1997).

Furthermore, as this Court noted in *Indiana State Ethics Commission v. Nelson*, 656 N.E.2d 1172 (Ind.Ct.App.1995), *trans. denied:*

> Administrative decisions must be based upon ascertainable standards to ensure that agency action will be orderly and consistent [citation omitted]. The test to be applied in determining whether an administrative agency regulation can withstand a challenge for vagueness is whether it is so indefinite that persons of common intelligence must necessarily guess at its meaning and differ as to its application.

656 N.E.2d at 1176. The Taylors argue that 470 I.A.C. § 3–1–3 did not provide them with sufficient notice that their failure to participate in the nurturing program would be grounds for the revocation of their license. Because the terms "mature individuals" and "good judgment" are not defined in the rule, the Taylors assert that 470 I.A.C. § 3–1–3 does not provide sufficient guidance for their conduct as foster parents and gives FSSA "unbridled discretion" in evaluating such conduct.

As with many similar rules governing personal conduct, 470 I.A.C. § 3–1–3 contains ostensibly broad and indefinite language. This Court has noted on previous occasions, however, that "the variety of forms such conduct may take makes it impossible to specify within the rules all acts which come within the meaning of those phrases." *See Bird v. County of Allen*, 639 N.E.2d 320, 334 (Ind.Ct.App.1994) (police officer discharged

for "conduct unbecoming an employee"; "any reasonable person" must have known that officer's conduct would result in discipline or dismissal); *Riggin v. Board of Trustees of Ball State University*, 489 N.E.2d 616 (Ind. Ct.App.1986), *trans. denied*, 499 N.E.2d 243 (Ind.1986) (professor terminated for failing to "perform duties for which he was employed" but not for violation of particular rule; "common sense, reason and good judgment" should have told professor that his conduct would constitute grounds for termination).

▮▮▮ In the instant case, caseworker Angela Coulon advised Janet on several occasions that OFC would no longer use the Taylors' home as a foster home if they failed to participate in the nurturing program. Although 470 I.A.C. § 3–1–3(a) does not specifically state that a foster parent's license may be revoked for failure to comply with the rule, it does provide sufficient notice and guidance for proper foster parent conduct. Because it would be impossible for FSSA to include all conceivable examples of permitted or prohibited foster parent conduct within a relevant rule, courts must use common sense and reason to determine whether a particular conduct violated such a broadly drafted rule. In the Taylors' case, a reasonable person of common intelligence could conclude that their failure to participate in a nurturing program designed for them to meet the emotional needs of foster children constituted a lack of "good judgment in the handling of a child" under 470 I.A.C. § 3–1–3(a). Consequently, this violation of FSSA's rule could be considered sufficient grounds for revocation of the Taylors' foster family home license under IND. CODE § 12–17.4–4–32. Therefore, 470 I.A.C. § 3–1–3 is neither vague on its face nor as applied.

For the reasons stated above, the decision of the trial court is reversed and remanded with instructions to order remand to the agency to conduct a new hearing and issue findings consistent with this opinion.

Reversed and remanded.

SHARPNACK, C.J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I concur subject to the following caveat concerning the possible use of 470 I.A.C. § 3-1-3(a) as the sole basis for revocation of a license. As noted by the majority, the regulation mandates that foster parents "be mature individuals who are capable of exercising and do exercise good judgment in the handling of a child". Op. at 1191.

In my view an allegation that a foster parent has violated that regulation must be specifically tied to certain conduct which would reflect to a reasonable person that the foster parent lacks the requisite maturity and good judgment. While I am not at all sure that an allegation of a failure to participate in a nurturing program necessarily and of itself demonstrates the requisite lack of maturity and good judgment, I am prompted to concur in the reversal and remand in order that the agency might make findings appropriate to whatever action is taken.