**Mark E. KINNAIRD, Appellant–Petitioner,**

v.

**SECRETARY, Indiana Family and Social Services Administration and Family and Social Services Administration, an agency of the State of Indiana, Appellees–Respondents.**

No. 37A05–0406–CV–292.

Court of Appeals of Indiana.

Nov. 29, 2004.

---

Kent Hull, Indiana Legal Services, Inc., South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mark E. Kinnaird appeals from the trial court's denial of his Motion to Set Aside the Indiana Family and Social Services Administration's ("IFSSA") final agency action terminating Kinnaird's Section 8 housing benefits. He presents a single dispositive issue on appeal, namely, whether the trial court applied the correct standard in its judicial review of the IFSSA's final agency action.

We affirm.[1]

1. We deny Kinnaird's request for oral argument.

### FACTS AND PROCEDURAL HISTORY

Kinnaird was a participant in the Section 8 Housing Assistance Program in Rensselaer.[2] As a condition of his participation, Kinnaird signed a Statement of Family Responsibility ("the Contract") which provided, in relevant part, that he was required to notify the Jasper County Housing Agency ("Housing Agency") in writing when he would be away from his apartment "for an extended period of time in accordance with [the Housing Agency's] policies." Appellant's App. at 61. That notification requirement is based upon a United States Department of Housing and Urban Development ("HUD") regulation requiring participants in the Section 8 Rental Voucher Program to "[p]romptly notify the [Housing Agency] in writing when the family is away from the unit for an extended period of time in accordance with [Housing Agency] policies." *Id.* at 64.

On March 4, 2002, Kinnaird was convicted of misdemeanor failure to pay child support, and he was sentenced to 289 days, with his sentence to commence on April 8, 2002. During his incarceration, Kinnaird paid the rent on his apartment, and he returned to that apartment upon his release on August 16, 2002. But Kinnaird never notified the Housing Agency about his absence. On September 13, 2002, the Housing Agency notified Kinnaird that his participation in the Section 8 program was being terminated effective April 30, 2002, because he had violated the provision of the Contract regarding notification of an extended absence.

Kinnaird challenged the Housing Agency's decision by requesting a hearing with

2. Kinnaird lives alone in an apartment, and his rent is subsidized under the terms of the program.

an Administrative Law Judge ("ALJ"). Kinnaird requested that he be reinstated as a participant in the Section 8 program, but he did not seek benefits for the period of time he was incarcerated. Kinnaird asserted that the alleged violation was not a result of bad faith. He maintained that he had not expected to be in jail for more than a few days pending an "appeal" of his conviction to the trial court. Following the evidentiary hearing, the ALJ issued the following relevant findings and conclusions:

10. [Kinnaird] did not notify the Housing Agency when first incarcerated because he did not believe he would be in jail for more than a few days. He learned upon his release from jail that his program assistance was being terminated retroactively to April 30, 2002.

11. The Housing Agency contends that [Kinnaird] violated the terms of his Family Obligations under the program guidelines by being away from his home more than thirty (30) days and "abandoning" his home.

12. [Kinnaird] continued to maintain the residence and its expenses at 1501 E. Grace Street, #5B, Rensselaer, Indiana, while incarcerated and continuing. He returned to the residence when he was released from jail.

13. The language "extended period of time," as used in the Housing Agency's Voucher, Payments Contract, and Family Obligations documents, is not defined.

### LEGAL BASIS

Pursuant to 24 CFR 982.552 "(a) Action or inaction by family. (1) An HA [Housing Agency] may deny assistance for an applicant or terminate assistance for a participant under the programs because of the family's action or failure to act as described in this section or Sec. 982.553 .... (b) Grounds for denial or termination of assistance. *The HA may at any time deny program assistance for an applicant, or terminate program assistance for a participant, for any of the following grounds: (1) If the family violates any family obligations under the program (see Sec. 982.551) .... (3) If an HA has ever terminated assistance under the certificate or voucher program for any member of the family .... (9) If a family participating in the FSS program fails to comply, without good cause, with the family's FSS contract of participation ....* (c) HA discretion to consider circumstances. (1) In deciding whether to deny or terminate assistance because of action or failure to act by members of the family, the HA has discretion to consider all of the circumstances in each case...."

### CONCLUSIONS OF LAW

[Kinnaird's] participation in the Section 8 Tenant–Based Certificate/Voucher Program was incorrectly terminated. [Kinnaird] was unexpectedly incarcerated for a misdemeanor conviction that lasted longer than he anticipated. During this time, he maintained his residence and returned to it upon his release, not abandoning it as claimed by the Housing Agency. Furthermore, nowhere in any of the signed documents is the language "extended period of time" defined as meaning more than thirty (30) days as a requirement for a tenant to inform the Housing Agency of an absence or abandonment. The language as used is vague.

[Kinnaird] did not violate the terms of the Section 8 Tenant–Based Certificate/Voucher Program, and the Housing Agency is directed to reinstate [Kinnaird's] program participation, effective September 1, 2002.

Appellant's App. at 78–80 (emphasis added).

The Housing Agency appealed the ALJ's decision to the IFSSA, which issued a Notice of Final Agency Action stating in relevant part as follows:

The Decision of the Administrative Law Judge dated January 7, 2003 is reversed. This reversal is based on the following rationale: The ALJ's conclusion that Mr. Kinnaird "was unexpectedly incarcerated for a misdemeanor conviction that lasted longer than he anticipated" is flawed. There is a Court order (County/State Exhibit F) requiring Mr. Kinnaird to serve 289 days in the County Jail, and it states the date the sentence is to commence. He had a month in between the date the order was entered and the date his incarceration was to start to *promptly notify* the Housing Authority (HA) that he would be in jail. According to the Statement of Family Responsibility signed by Mr. Kinnaird (County/State Exhibit B), he was required to "[p]romptly notify the HA in writing when the family is away from the unit for an extended period of time in accordance with HA policies." However, by a reasonable person's standard, one would conclude that 130 days (the actual time Mr. Kinnaird served) is an extended period of time. The State's original decision to terminate Mr. Kinnaird from the Section 8 Housing Assistance Program is sustained.

*Id.* at 88 (emphasis original).

Kinnaird then sought judicial review of that final agency action. Following the parties' oral arguments, the trial court issued an order stating in relevant part:

The Court finds that it may not reverse the administrative ruling unless it finds that the ruling is arbitrary and capricious in light of the facts of the case. The Court finds that although this works somewhat of an injustice on behalf of the Plaintiff, the ruling by the administrative agency cannot be said to be arbitrary and capricious.

Therefore, the Court now overrules and denies the Plaintiff's Motion to Set Aside the Administrative Agency's Decision.

*Id.* at 4. This appeal ensued.

## DISCUSSION AND DECISION

■ Kinnaird contends that the trial court gave too much deference to the IFSSA's decision. In particular, Kinnaird maintains that the provision is vague, and, thus, he contends that the reviewing court should give little or no deference to the final agency action. The Administrative Orders and Procedures Act ("AOPA"), Indiana Code Section 4–21.5–1–1 *et seq.,* applies to the review of administrative decisions. In *Equicor Dev., Inc. v. Westfield–Washington Township Plan Comm'n,* 758 N.E.2d 34, 36–37 (Ind.2001), our supreme court stated the applicable standard of review as follows:

Indiana Code [S]ection 4–21.5–5–14 prescribes the scope of court review of an administrative decision. That section provides that a court may provide relief only if the agency action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Section 4–21.5–5–14(a) further provides that "the burden of demonstrating the invalidity of the agency action is on the party ... asserting invalidity." In reviewing an administrative decision, a court is not to try the facts de novo or substitute its

own judgment for that of the agency. This statutory standard mirrors the standard long followed by this Court.

On appeal, to the extent the trial court's factual findings were based on a paper record, this Court conducts its own de novo review of the record. If the trial court holds an evidentiary hearing, this Court defers to the trial court to the extent its factual findings derive from the hearing.... To the extent findings turn solely on [a] paper record, review is de novo.

(Citations omitted). Moreover, if a party alleges that the administrative body committed an error of law, both the trial court and this court on appeal owe no deference and review questions of law de novo. *See Town of Beverly Shores v. Bagnall,* 590 N.E.2d 1059, 1061 (Ind.1992).

Here, the trial court did not conduct an evidentiary hearing but based its decision on the parties' briefs and oral arguments. Thus, we owe the trial court no deference, and our review is de novo. *See Equicor,* 758 N.E.2d at 37 (stating where both appellate and trial court review same paper record, there is no reason for appellate court to defer to trial court) (quoting *Houser v. State,* 678 N.E.2d 95, 98 (Ind. 1997)).

Again, in essence, Kinnaird contends that the requirement contained in the Contract that he promptly notify the Housing Agency when he expected to be absent from the apartment "for an extended period of time" is too vague. He maintains that he cannot be found to have violated a requirement when he did not know with sufficient specificity what was required of him. And he asserts that this lack of clarity means that the reviewing court should give little or no deference to the agency action.

In support of his contentions, Kinnaird cites to this court's opinion in *Taylor v. Indiana Family and Soc. Servs. Admin.,* 699 N.E.2d 1186, 1192 (Ind.Ct.App.1998), where we stated:

Administrative decisions must be based upon ascertainable standards to ensure that agency action will be orderly and consistent [citation omitted]. The test to be applied in determining whether an administrative agency regulation can withstand a challenge for vagueness is whether it is so indefinite that persons of common intelligence must necessarily guess at its meaning and differ as to its application.

(Quoting *Indiana State Ethics Comm'n v. Nelson,* 656 N.E.2d 1172, 1176 (Ind.Ct. App.1995), *trans. denied* ). Further, this court has stated:

An agency that reaches a conclusion in the absence of "ascertainable standards which are well stated and followed" may have acted arbitrarily and capriciously. Two reasons counsel against permitting agency actions based on unwritten rules: first, parties are entitled to fair notice of the criteria by which their petitions will be judged by an agency, and second, judicial review is hindered when agencies operate in the absence of established guidelines. An agency action may also be considered arbitrary and capricious "if made in disregard of the facts and circumstances of the case without some basis which would lead a reasonable person to the same conclusion."

*County Dep't of Pub. Welfare of Vanderburgh County v. Deaconess Hosp., Inc.,* 588 N.E.2d 1322, 1327 (Ind.Ct.App.1992) (citations omitted), *trans. denied.*

■ Kinnaird is correct that the meaning of "extended period of time" is not

defined, nor is there anything in writing showing that the Housing Agency considered any absence lasting more than thirty days to fall within that category.[3] But we need not reach the question of whether the regulation is vague, because we hold, as a matter of law, that a 130 day absence constitutes an extended period of time under any reasonable interpretation of the Housing Agency's policy. *See, e.g., Taylor*, 699 N.E.2d at 1192 (holding administrative rule not void where "a reasonable person of common intelligence could conclude that [the appellants'] failure to participate in a nurturing program designed for them to meet the emotional needs of foster children constituted a lack of 'good judgment in the handling of a child'" under the challenged rule). Even if we gave no deference to the IFSSA's findings and conclusions, we cannot say that the regulation was unreasonable as applied in this case.

In short, we hold that Kinnaird received fair notice that he was required to advise the Housing Agency about his 130 day incarceration. And, 24 CFR § 982.552 provides in relevant part that the Housing Agency may deny or terminate program assistance for a participant who violates "any family obligations under the program." Appellant's App. at 78. The requirement that Kinnaird notify the Housing Agency of an extended absence is listed under a section of the Contract entitled "Obligations of the Family." When he failed to provide the required notice, he was in violation of the terms of the Contract. As such, the Housing Agency had discretion to terminate Kinnaird's benefits under the program and to deny his request that he be reinstated as a Section 8 participant.

Affirmed.

KIRSCH, C.J., and VAIDIK, J., concur.

**C.S., Appellant–Respondent,**

v.

---

3. Kinnaird argues that the thirty-day standard applied by the Housing Agency is "void and unenforceable" because it is "an internal unpromulgated policy." Reply Brief at 2–3. But we need not address that issue because we restrict our analysis to whether 130 days constitutes an extended period of time under the terms of the Contract.