**METROPOLITAN SCHOOL DISTRICT OF SOUTHWEST ALLEN COUNTY, Appellant–Respondent,**

v.

**ALLEN COUNTY, Indiana, Appellee–Petitioner.**

No. 02A03–0012–CV–445.

Court of Appeals of Indiana.

Aug. 6, 2001.

William T. Hopkins, Jr., Karen A. Festa, Barnes & Thornburg, Fort Wayne, IN, Attorneys for Appellant.

G. William Fishering, Laura L. Reuss, Beers Mallers Backs & Salin, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Metropolitan School District of Southwest Allen County (School District), appeals the trial court's judgment entered in favor of the appellee-petitioner Allen County, Indiana (Allen County). Specifically, the School District maintains that the trial court's decision reversing the State Board of Education's (the Board) ruling was arbitrary, capricious and unsupported by the evidence. The Board had determined that Allen County was obligated to pay the School District $101,448.72 in transfer tuition fees with respect to eight minor students who were located in the School District, along with an eight percent penalty and an amount for attorney's fees.

### FACTS

The facts most favorable to the judgment are that during the 1980s and 1990s, eight students were placed in Anthony Wayne Services group homes, which were state-licensed, not-for-profit facilities for developmentally disabled individuals. Those students were located in the School District, under eighteen years of age and unemancipated. The Allen County Office of Family and Social Services Administration (FSSA) was involved in placing two of the students in the group homes, and the Allen County FSSA Division of Disabilities and Rehabilitative Services, (DARS) was involved in the placement of the other six students.

During the relevant time periods, the parents of the students resided in Allen County, but not in the School District. The parties provided letters to the Board which each student and his or her parent had received from the State Department of Public Welfare (DPW). That correspondence indicated that the DPW had approved Medicaid funding for each student's care in the group home. Another set of documents showed that the students were certified for admission to the Anthony Wayne Services group homes, which are classified as Intermediate Care Facilities for the Mentally Retarded (ICF–MR).

The County paid the School transfer tuition for the eight students for the 1990–93 school years with no objection. The County refused to pay the 1993–94 transfer tuition bill, however, because the amount had increased from previous years to $101,448.72. In response, the School District sent a letter to the County Auditor requesting payment of the transfer tuition for the eight students.

When payment was not forthcoming, the School District petitioned the Board in 1996, requesting that Allen County be ordered to pay the 1993–94 transfer tuition. Allen County refused to pay and counterclaimed against the School District for return of the previously paid transfer tuition. Thereafter, on February 6, 1997, the Board adopted the hearing officer's decision that ruled in favor of the School District. Specifically, Allen County was ordered to pay transfer tuition to the School District in the amount of $101,448.72 for the eight students. The Board also awarded the School District an eight percent penalty along with $11,104.54 in attorney's

fees and costs. Thus, the Board denied Allen County's counterclaim.

Allen County then appealed the Board's decisions to the Allen Circuit Court. Following a hearing that commenced on August 3, 2000, the trial court reversed the Board's decision and granted judgment for Allen County on its counterclaim in the amount of $109,670.95. In essence, the trial court determined that no statutory provision existed that would support either the obligation of Allen County to pay or the right of the School District to retain the amount of funds that Allen County had already paid. Thus, the trial court reasoned that equity required that the School District return the amount to Allen County. The School District now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ We initially observe that judicial review of an administrative decision is limited. *State v. C.M.B. III Enters., Inc.*, 734 N.E.2d 653, 658 (Ind.Ct.App.2000), *trans. denied.* When reviewing an administrative agency's decision, appellate courts stand in the same position as the trial court. *Amoco Oil Co. v. Comm'r of Labor*, 726 N.E.2d 869, 872 (Ind.Ct.App.2000). Review of an agency's decision is confined largely to the agency record, and an administrative agency decision should be reversed only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

IND. CODE § 4-21.5-5-14; *see also Ind. Alcoholic Beverage Comm'n v. Edwards*, 659 N.E.2d 631, 632 (Ind.Ct.App.1995).

The party seeking judicial review bears the burden of demonstrating that the agency's action is invalid. I.C. § 4-21.5-5-14(a).

■ When reviewing an agency's decision, the trial court is not to conduct a trial *de novo*, reweigh the evidence or judge the credibility of witnesses. Stated another way, a court's "review of an agency's decision cannot be considered de novo in the sense of a complete retrial of the issues involved. Rather, [the court] must go no further than to examine the propriety of the agency's facts as the agency found them and the propriety of the agency's order in light of the facts found." *Taylor v. Ind. Family & Soc. Servs.*, 699 N.E.2d 1186, 1189 (Ind.Ct.App.1998). Both trial and appellate courts are bound by the agency's findings of fact if those findings are supported by substantial evidence. *Id.*

■ A trial court is charged with determining whether an administrative agency's findings of facts are based on substantial evidence and whether the conclusions of law have a reasonably sound basis of evidentiary support. *Ind. Civil Rights Comm'n v. S. Ind. Gas & Elec. Co.*, 648 N.E.2d 674, 680 (Ind.Ct.App.1995), *trans. denied.* A trial court may vacate or reverse an agency's decision only if the evidence, when viewed as a whole, demonstrates that the conclusions reached by the agency are clearly erroneous. *City of Indianapolis v. Hargis*, 588 N.E.2d 496, 498 (Ind.1992). We note that if a reasonable person would conclude that the evidence and the logical and reasonable inferences therefrom are of such a substantial character and probative value so as to support the administrative determination, the substantial evidence standard is met. *Id.* This court gives considerable weight to an agency's interpretation of its own statutes. *See Taylor*, 699 N.E.2d at 1191. More-

over, we pay due deference to the interpretation of a statute by the administrative agency that is charged with its enforcement in light of its expertise in its given area. *Ballard v. Book Heating & Cooling, Inc.,* 696 N.E.2d 55, 56 (Ind.Ct.App.1998), *trans. denied.*

### II. The School District's Claims

The School District contends that the trial court misapplied the standard of review and erroneously vacated the Board's decision with respect to payment of the tuition costs and placement of the students. The School District goes on to assert that the trial court reweighed the evidence as to both considerations and erroneously substituted its judgment for that of the Board.

We first turn to the relevant statutory provisions involved in this case. IND. CODE § 20–8.1–6.1–5, the "Placement Statute," provides that:

(a) a student who is placed in a state licensed private or public health care facility, child care facility, or foster home:

(1) by or with the consent of the division of family and children;

(2) by a court order; or

(3) by a child-placing agency licensed by the division of family and children;

may attend school in the school corporation in which the home or facility is located. *If the school corporation in which the home or facility is located is not the school corporation in which the student has legal settlement, the county of the student's legal settlement shall pay the transfer tuition of the student.*

(Emphasis supplied). The "Legal Settlement Statute," I.C. § 20–8.1–6.1–1, states that:

(a) The legal settlement of a student shall be governed by the following provisions:

(1) If the student is under eighteen (18) years of age, or is over that age but is not emancipated, the legal settlement of the student is in the attendance area of the school corporation where the student's parents reside.

(2) Where the student's mother and father, in a situation otherwise covered in subdivision (1), are divorced or separated, the legal settlement of the student is the school corporation whose attendance area contains the residence of the parent with whom the student is living, in the following situations:

(A) Where no court order has been made establishing the custody of the student.

(B) Where both parents have agreed on the parent or person with whom the student will live.

(C) Where the parent granted custody of the student has abandoned the student. In the event a dispute between the parents of the student, or between the parents and any students over eighteen (18) years of age, the legal settlement of the student shall be determined as otherwise provided in this section.

(3) Where the legal settlement of a student, in a situation to which subdivision (1) or otherwise applies, cannot reasonably be determined, and the student is being supported by, cared for by, and living with some other person, the legal settlement of the student shall be in the attendance area of that person's residence, except where the parents of the student are able to support the student but have placed him in the home of another person, or permitted the student to live with another person, primarily for the purpose of attending school in

the attendance area where the other person resides. The school may, if the facts are in dispute, condition acceptance of the student's legal settlement on the appointment of that person as legal guardian or custodian of the student, and the date of legal settlement will be fixed to coincide with the commencement of the proceedings for the appointment of the guardian or custodian. However, if a student does not reside with the student's parents because the student's parents are unable to support the child (and the child is not residing with a person other than a parent primarily for the purpose of attending a particular school), the student's legal settlement is where the student resides, and the establishment of a legal guardianship may not be required by the school. In addition, a legal guardianship or custodianship established solely for the purpose of attending school in a particular school corporation does not affect the determination of the legal settlement of the student under this chapter.

We note that when construing the above statutes, the legislature has specifically charged the Board with handling "all disputes" about "legal settlement," "amount of transfer tuition," and "any other matter arising under [chapter 6.1]." I.C. § 20–8.1–6.1–10.

### A. Student Placement and Legal Settlement

■ Bearing the above statutory provisions in mind, the School District attacks a number of findings made by the trial court regarding Allen County's duty to pay the students' tuition with respect to the placement of the students and legal settlement issues. For instance, the Board determined that the Division of Family and Children (DFC) consented to the students' placement. That finding was based upon the

evidence consisting of the DPW documents that were attached to the parties' stipulations. The attachments submitted jointly by the parties indicated that each affected student was placed "by or with the consent of the division of family and children." They consisted of correspondence from the DPW concerning Medicaid and physician certification forms. The physician certification forms applied to each student regarding his or her admission to the group home. A representative from the DPW specifically noted that the students were "approved" for "admission" to "ICF–MR." Record at 158–75. The language set forth in these documents demonstrates that the DFC expressly consented to, or approved of, placement of the students. Thus, the Board's decision was consistent with the evidence that was placed before it. It is apparent that the Board simply rejected Allen County's argument that the DFC was only performing a ministerial function of approving Medicaid. The trial court did not give due deference to the Board's interpretation of the statute and the evidence that was submitted. As set forth above, the legislature expressly authorized the Board pursuant to I.C. § 20–8.1–6.1–10 to determine matters of legal settlement and transfer tuition. Notwithstanding this evidence, the trial court set aside the Board's findings and concluded that the documents did not constitute substantial evidence of DFC involvement. R. at 509. Moreover, the trial court, in reviewing these documents, maintained that they had an entirely different meaning from that found by the Board. R. at 507–08.

It is readily apparent that the trial court did not defer to the Board's expertise when interpreting the relevant statutes and it did not consider whether the Board's interpretation of the law was permissible. Additionally, the trial court found it significant that the students were

residing at the group home before receiving the DPW letters concerning Medicaid. It also concluded that the statutes prohibit DFC "consent" after a student is already living in one of the group home facilities. The Board did not find such evidence to be outcome determinative. Rather, it noted that the statute was silent as to how or when the DFC must "consent" to placement. As a result, the trial court should have left the interpretation of the statute to the Board in light of its expertise in matters such as these.

The Board also determined that the students were under eighteen or unemancipated and that their parents resided in Allen County but not in the School District. Thus, it concluded that their homes were with their parents and that their "legal settlement" in accordance with that statute was with their parents.

The trial court set aside the Board's determination and found as follows:

5. The parties concede and the Court finds that the students are developmentally disabled, qualified for Medicaid, are supported by, cared for by, and living with some other person without ability to pay transfer tuition.

6. The Court finds no evidence in this Record of a vexatious refusal to pay the six (6) students' transfer tuition fees. Rather, the parties seek a determination of the students' legal settlement which, as between them, could not "reasonably be determined." Within I.C. 20–8.1–6.1–1(a)(1) and (3). The parties disagree with the legal inferences to be drawn from the action of the Division of Disabilities and Rehabilitative Services to transfer the students' residence to the Anthony Wayne Services' group homes. There is neither evidence nor statutory guidance that the Division of Family and Children is synonymous with the Division of Disabilities and Rehabilitation Services.

7. Accordingly, the court finds the legal settlement of the student is in the attendance area of the students' residence at the Anthony Wayne Services' group homes, without exception.

R. at 508. Our review of the record reveals that the Board did not find that the students lacked the ability to pay transfer tuition. Moreover, the statute speaks of a governmental entity's duty to pay the tuition based upon the students' placement and not on their ability to pay. The Board specifically rejected the contention that the students resided at the group home because their parents could not support them. R. at 255–56. Rather, it determined that the students resided at the group home to receive the medical and psychological care that the group home could provide them.

The only evidence offered by Allen County that the parents could not "support" the students was that they received Medicaid assistance to pay for their care. As determined by the Board, Medicaid's purpose is to give families needing assistance a level of independence, not to deprive parents of their parental role.[1] Thus, the Board did not act arbitrarily or capriciously when it determined that "parents do not lose their rights merely because they require or request assistance from others in caring for the special health and welfare needs of their children." R. at 256. The Board found that the students' relationship to the group home was contractual only, and that their "homes" remained with their parents. R. at 255–56. In addition, the Board determined that paragraph (a)(3) of the statute quoted above concerned situations where someone

1. 42 U.S.C. § 1396.

other than a student's parents acted as the student's guardian, and the specific portion of subsection (a)(3) Allen County relied upon, concerned situations where some other individual acted *in loco parentis* of a student, even though no formal guardianship had been established. Thus, it is apparent that the Board construed this subsection and statute as a whole. The plain language of subsection (a)(3) in the settlement statute showed that it applied to situations where a student was living with some other individual in his or her home and that individual was acting as the student's parent, such as a guardian, whether through a formal guardianship or informally. This is evidenced by language such as "the legal settlement of the student shall be in the attendance area of that person's residence," or discussing situations in which schools may require "appointment of that person as legal guardian or custodian of the student." I.C § 20–8.1–6.1–1. The Board found no facts showing that the type of relationships described in subsection (a)(3) existed in this case. Additionally, the Board interpreted the plain language contained in subsection (a)(3) indicating that the subsection applied only where the legal settlement of a student, in a situation to which subdivision (1) otherwise applies, cannot reasonably be determined. Contrary to Allen County's assertion, there was much more than a "mere scintilla" of evidence before the Board showing that the students' legal settlement could reasonably be determined under subsection (a)(1). The findings with respect to this issue are supported by the evidence, are reasonable and should have been accepted by the trial court.

Inasmuch as the trial court exceeded its scope of review with respect to the Board's findings, we must ignore its findings of fact, conclusions of law, and judgment regarding the decision of tuition reimbursement. *See Taylor,* 699 N.E.2d at 1189.

## B. Penalty Assessment and Award of Attorney's Fees

▆ The School District also attacks the trial court's decision to reverse an eight percent penalty and attorney's fees it was awarded by the Board in accordance with I.C. § 20–8.1–6.1–11(c). This statute provides as follows:

> (c) Whenever a school corporation prevails at the final adjudication of an administrative proceeding under this chapter, or a lawsuit against a county or another school corporation, to compel payment of transfer tuition owed by that county or school corporation under this chapter, *the administrative body or the court shall award to the prevailing party the transfer tuition owed, if any, plus reasonable attorney's fees and a penalty not to exceed twenty-five percent (25%) of the amount of transfer tuition owed.*

(Emphasis supplied). As quoted above, the only prerequisite necessary for the Board to award the fees is that the party should be the prevailing party. Moreover, the award of the penalty and attorney fees is mandatory. Inasmuch as the Board determined that the School District was the prevailing party, and we have upheld the Board's decision with respect to the transfer tuition payment, its award of the eight percent penalty was reasonable appropriate.

Next, we note that legal counsel representing the School District presented an affidavit to the Board indicating that reasonable attorney's fees and costs amounted to $11,104.54. The fee petition indicated the hourly rate, the type of work performed and the amount of time spent on the work. The Board considered the petition, heard arguments by Allen County regarding whether the work was necessary, and adjusted the amount based upon the arguments and evidence presented.

We cannot say that the award in the amount of $11,104.54 for attorney's fees and costs was unreasonable.

## CONCLUSION

In light of the disposition of the issues set forth above, it is apparent that the trial court erred in not deferring to the Board's interpretation of either the Legal Settlement Statute or the Placement Statute. Finally, we note that the Board's award of an eight percent penalty of the tuition amount and the award of attorney's fees were reasonable.

Judgment reversed and remanded with instructions that the Board's decision be reinstated, and that the Board be further authorized to consider an award of appellate attorney fees.

FRIEDLANDER, J., and RILEY, J., concur.