**EMPLOYEE BENEFIT MANAGERS, INC. OF AMERICA and Charles Belch, Appellants–Petitioners,**

v.

**INDIANA DEPARTMENT OF INSURANCE, Appellee– Respondent.**

No. 02A03–0704–CV–148.

Court of Appeals of Indiana.

March 12, 2008.

Mark D. Ulmschneider, Andrew L. Teel, Steele, Ulmschneider & Malloy, Fort Wayne, IN, Attorneys for Appellants.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Employee Benefit Managers, Inc. of America and its President, Charles Belch ("Belch"), (collectively, "EBM") appeal a decision of the Allen Superior Court affirming an order of the Indiana Department of Insurance ("the Department") that, in relevant part, revoked insurance licenses held by EBM.[1] We affirm.[2]

### Issues

EBM has presented the following issues for review:

I. Whether the Department's order is ultra vires because the Department lacked subject matter jurisdiction over EBM;

II. Whether there is substantial evidentiary support for:

(a) the finding that EBM was dishonest and financially irresponsible,

(b) the finding that EBM failed to arrange for the payment of unfunded claims, and

(c) the finding that EBM violated paragraph 5(e) of the Agreed Entry; and

III. Whether EBM was denied due process because the Department

1. Belch was licensed as an insurance producer, and EBM was licensed as a third party administrator and as an insurance producer.

2. Oral argument was conducted on February 19, 2008 in the Indiana Supreme Court courtroom, attended by the members of the Indianapolis Bar Association Bar Leader Series V. We commend counsel on the quality of their written and oral advocacy.

failed to conduct sufficient compliance hearings.

### Facts and Procedural History

EBM was engaged in managing the funding and administration of self-funded employee benefit plans for employer-clients. The Department obtained an Examination Warrant, issued December 10, 2003, to allow the examination of EBM's records by the Department. On January 27, 2004, the Department obtained a subpoena for EBM records. On May 25, 2004, the Department lodged charges of non-compliance.

The Department and EBM entered into an Agreed Entry dated July 7, 2004, and a subsequent Agreed Entry dated November 22, 2004. EBM was required to arrange for the funding and payment of then-unfunded claims as verified by the Special Financial Examiner, amounting to approximately $1,795,000.00. EBM agreed to cease offering or administering any health plans in which fees collected from different employers to fund health claims were commingled in depository accounts. EBM also agreed to provide employers with documents defining the terms and conditions of any claims funding arrangements and/or stop loss insurance policies.

EBM agreed to have in place a funding source for unfunded claims in an amount no less than $600,000.00 as of thirty days from the date of the Final Order. On November 22, 2004, the Acting Commissioner issued a Final Order incorporating and adopting the Agreed Entry. EBM's licenses were placed on probationary status. On March 22, 2005, the Department requested an emergency hearing.

At the March 31, 2005 hearing, Belch testified that EBM no longer commingled funds from participating employer groups in a single account, and that marketing materials clearly explained the nature of EBM's programs. EBM had obtained Key Man life insurance and had afforded the Special Financial Examiner access to pertinent files. However, Belch also testified that EBM was not in compliance with the requirement to arrange for funding and payment of all unfunded claims. Employers' deposited funds and accounts receivable were being used to pay claims and EBM was pursuing additional funding. At the conclusion of the hearing, Commissioner Atterholt took the matter under advisement.

On April 29, 2005, Commissioner Atterholt issued a Stipulated Stay of Proceedings extending the compliance date for claims funding and payment to June 1, 2005. A hearing was conducted on June 17, 2005, at which EBM identified a potential source of funding, but admitted that the anticipated funding was not yet in place. Commissioner Atterholt again took the matter under advisement.

On or before July 1, 2005, EBM deposited $219,000.00 into an account for the payment of unfunded claims. Also on July 1, 2005, Commissioner Atterholt issued an order that EBM deposit into that account a minimum of $804,000.00 more before July 8, 2005. By July 15, 2005, EBM was to provide proof that the account funds had been expended for claims payments. Pursuant to a supplemental order issued on July 11, 2005, non-compliance was to result in suspension of EBM's insurance licenses.

On October 26, 2005, a final hearing was conducted. On January 31, 2006, the Department filed an Emergency Motion for Cease and Desist, alleging that EBM had issued letters to employers suggesting that failure to reimburse EBM for purported loans was a violation that EBM was entitled to redress under authority of state government, specifically the Department.

On February 17, 2006, Commissioner Atterholt issued an Emergency Cease and Desist Order/Final Order revoking the licenses held by EBM and Belch and ordering them to not engage in conduct that constitutes the business of insurance without applying for and receiving a certificate of authority to do so. However, the Order provided: "Belch and EBM are *not* prohibited from doing business with employers in the form of single employer self insured health plans as those activities are outside the scope of the Indiana Department of Insurance and are subject [to] the regulation of federal government agencies." (App.1100.) (emphasis in original.)

The revocation was based upon the Commissioner's findings that claims were not timely paid and employers were misled into believing that a funding source was in place when it was not in place. Subsequently, EBM filed a response brief but did not request an additional hearing.

On March 20, 2006, EBM filed a Verified Petition for Judicial Review pursuant to Indiana Code Section 4–21.5–5–1 et seq. The trial court conducted hearings on September 19, 2006, and on October 3, 2006. On January 11, 2007, after the parties submitted proposed findings of fact and conclusions of law, the trial court held an additional hearing to determine whether Belch had been dismissed as a party to the proceedings before the Department. On February 12, 2007, the trial court affirmed the Department's order. EBM now appeals.

**Standard of Review**

Although the legislature has granted courts the power to review the action of state government agencies taken pursuant to the Administrative Orders and Procedures Act (AOPA), this power of judicial review is limited. *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000). A court may only set aside agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Ind.Code § 4–21.5–5–14(d).

The burden of demonstrating the invalidity of an agency action is on the party asserting its invalidity. Ind.Code § 4–21.5–5–14(a). An agency acts arbitrarily or capriciously if its action constitutes a willful or unreasonable action without consideration and in disregard of the facts and circumstances of the case or without some basis that would lead a reasonable person to such action. *Indiana State Bd. of Educ. v. Brownsburg Comm. School Corp.*, 865 N.E.2d 660, 665 (Ind.Ct. App.2007). Trial and appellate courts that review administrative determinations are prohibited from reweighing the evidence or judging the credibility of witnesses and must accept the facts as found by the administrative body. *Id.* at 665–66. While an appellate court shows deference to the administrative agency's findings of fact, no such deference is accorded to the agency's conclusions of law. *LTV Steel*, 730 N.E.2d at 1257.

*I. Jurisdiction*

The threshold question is whether the Department had jurisdiction over EBM. The trial court found that the Department had jurisdiction over EBM because (1) EBM and Belch held insurance licenses; (2) the terms of the Agreed Entry provided that the Department had jurisdiction over EBM; and (3) EBM was producing products that look and act like insurance. EBM denies that it engages in insurance

activities that the Department has the power to regulate.

The function of the Department is described in Indiana Code Section 27–1–1–1 as follows:

There is hereby created a department in the state government of the state of Indiana which shall be known as the department of insurance. *Said department shall have charge of the organization, supervision, regulation, examination, rehabilitation, liquidation, and/or conservation of all insurance companies to which this title is applicable,* shall have charge of the enforcement, administration, and execution of the provisions of this title and the provisions of any other statute applicable to insurance companies, to the insurance department, or to the insurance commissioner, and shall exercise such other powers and perform such other duties as may at any time be imposed or conferred on the department by law. Wherever by any of the provisions of any statute any right, power, or duty is imposed or conferred on the department, the right, power, or duty so imposed or conferred shall be possessed and exercised by the insurance commissioner, unless otherwise provided in that statute, or unless any such right, power, or duty is delegated to the duly appointed deputies, assistants, or employees of the department, or any of them, by an appropriate rule or order of the insurance commissioner.

(emphasis added.)

Indiana Code Section 27–1–2–2 delineates the application of Article 1:

This article shall be applicable to all persons, firms, partnerships, corporations, associations, orders, societies, and systems and to associations *operating as* Lloyds, interinsurers, or individual underwriters authorized as of March 8, 1935, to make insurance under the provisions of any statute enacted prior to March 8, 1935, or organized or incorporated before or after March 8, 1935, under the provisions of any statute of this state, or which are doing or attempting to do, or which are representing that they are doing an insurance business in this state, or which are in process of organization for the purpose of doing or attempting to do such business. All domestic, foreign, and alien companies authorized to do business in this state shall be subject to this article; however, any not-for-profit corporation which pays death benefits to the owner of a valuable registered horse on the death of said horse shall for that purpose not be subject to this article.

(emphasis added.)

Indiana Code Section 27–1–2–3(a) defines "insurance" as:

a contract of insurance or an agreement by which one (1) party, for a consideration, promises to pay money or its equivalent or to do an act valuable to the insured upon the destruction, loss or injury of something in which the other party has a pecuniary interest, or in consideration of a price paid, adequate to the risk, becomes security to the other against loss by certain specified risks; to grant indemnity or security against loss for a consideration.

EBM argues that it is not an "insurance company" because it doesn't produce and sell insurance. The nature of EBM's primary business is that it acts as a contract administrator. An employer who participates in a self-funded employee benefit plan and a funding source execute a contract called a Claims Funding Agreement. There is an additional agreement between EBM and the funding source ("an Operating Agreement"). The employer sets aside sums of money each month to pay

for the medical claims of its employees. When the money set aside is insufficient to fund the medical claims, the funding source loans money to the employer. The loans are repaid over time. EBM administers the contract between the funding source and the employer and acts on behalf of the employer to ensure that claims are paid in accordance with employer Plan Documents. According to EBM, these Plan Documents fall exclusively under the supervisory responsibility of the United States Department of Labor, as the plans are established under the Employee Retirement Income Security Act ("ERISA").

EBM further argues that licensure is irrelevant so long as the licenses are not used to engage in insurance activities. EBM draws an analogy to one holding a driver's license but not actually using it, with the Bureau of Motor Vehicles having no inherent power to regulate the individual merely because of his driver's license. EBM concedes that, in light of the Agreed Entry, the Department may have exercised personal jurisdiction, but maintains that subject matter jurisdiction was not, and could not, have been conferred upon the Department. EBM also argues that, assuming the Department properly exercised jurisdiction over EBM at one time, the Department was divested of its jurisdiction when EBM ceased commingling funds.

The Department has agreed with EBM that certain of its ventures are within ERISA and are regulated by the Department of Labor. Indeed, the appealed order provided: "Belch and EBM are not prohibited from doing business with employers in the form of single employer self insured health plans as those activities are outside the scope of the Indiana Department of Insurance and are subject [to] the regulation of federal government agencies." (App.1100.) However, the Depart-

ment asserts that EBM has not substantiated its claim that its product or activities, in their entirety, are within ERISA and regulated by the Department of Labor. We agree.

 In simple terms, "insurance" is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event. *Meyer v. Bldg. & Realty Serv. Co.,* 196 N.E. 250, 253–54, 209 Ind. 125, 134 (1935). Here, in light of the fact that EBM commingled employer funds, there was a pooling of assets and sharing of risk among employers. An employee of one of the participating employers who had sustained medical costs would be reimbursed from the pooled resources. Thus, for all practical purposes, EBM was involved in health insurance as it used a common fund to indemnify persons against contingent events. After EBM had engaged in these activities, it entered into an Agreed Entry with the Department in lieu of immediate license revocation. The objective of the agreement was to protect the "insured." The Department did not lack authority to oversee compliance with the agreement or revoke insurance licenses in the event of non-compliance.

## II. Evidentiary Support for Findings

EBM challenges the Department's findings, which were affirmed by the trial court, to the effect that: EBM engaged in dishonest and financially irresponsible actions by leading employers to believe that funding was in place when it was not, EBM failed to comply with the Agreed Entry requirement of arranging for payment of all unfunded claims, and EBM violated paragraph 5(e) of the Agreed Entry by failing to provide documents specifically defining the terms of claims funding arrangements.

■ Both trial and appellate courts are bound by agency findings of fact if those findings are supported by substantial evidence. *Metropolitan Sch. Dist. of Southwest Allen County v. Allen County*, 753 N.E.2d 59, 62 (Ind.Ct.App.2001). A trial court may vacate or reverse an agency's decision only if the evidence viewed as a whole demonstrates that the conclusions reached by the agency are clearly erroneous. *Id.* If a reasonable person would conclude that the evidence and the logical and reasonable inferences therefrom are of such a substantial character and probative value so as to support the administrative determination, the substantial evidence standard is met. *Id.*

■ Although EBM frames its appellate issues in terms of lack of substantial evidence, EBM must concede that Belch testified to the lack of funding, lack of full payment of pending claims, and lack of written advisement of all terms and conditions as required by paragraph 5(e) (because funding information was omitted). EBM then makes a variety of arguments that essentially distill to two themes: (1) the findings emphasized minor portions of testimony, taken out of context in the sense that the majority of the testimony related to EBM's substantial efforts; and (2) the Department should have been more lenient and recognized that EBM's full performance was impracticable if not impossible.

EBM also asserts that it was not obligated to meet an actual deadline for paying claims, but was simply ordered to arrange for funding. According to EBM, eventually EBM did all that it could do to comply with the order to arrange for funding claims, but some claims were not paid because some employer-clients would not execute a Claims Funding Agreement and EBM could not compel them to do so.

In essence, EBM claims that its substantial efforts to comply should be accepted in lieu of full compliance. However, we may not reweigh the evidence to disregard Belch's testimony of non-compliance while crediting testimony of efforts to comply. Nor may we rewrite the terms of the Agreed Entry. Based upon the record before us, a reasonable person would conclude that the evidence and the logical and reasonable inferences therefrom are of such a substantial character and probative value so as to support the administrative determination. As such, the substantial evidence standard is met and we may not disturb the challenged decision. *Metropolitan Sch. Dist. of Southwest Allen County*, 753 N.E.2d at 62.

### III. Due Process

Finally, EBM contends it was denied due process because the Department failed to hold an additional compliance hearing, which would have revealed the extent of EBM's "significant steps toward full compliance." Appellant's Brief at 13.

■ The Fourteenth Amendment to the United States Constitution provides that "no person shall be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. Due process clearly requires a fair opportunity to be heard. *Roy A. Miller & Sons, Inc. v. Industrial Hardwoods Corp.*, 775 N.E.2d 1168, 1171 (Ind.Ct.App.2002).

■ In this case, three hearings were conducted before the Final Order. The last hearing was held to address pending motions and to determine whether another evidentiary hearing would be needed. Commissioner Atterholt expressed an opinion that a hearing in two weeks would be pointless if there was no additional information to be forthcoming, and gave EBM's attorney the opportunity to respond. EBM's attorney asserted that he

thought his clients were making good progress, but he was unable to represent to the Commissioner that outstanding issues would be resolved in two weeks. At that point, Commissioner Atterholt declined to set an additional compliance hearing.

Before the Commissioner, EBM did not claim entitlement to a future hearing because dispositive evidence would be forthcoming. Nevertheless, EBM's position on appeal is that the Commissioner was required to set another hearing even if it was apparent to both parties that the hearing would be a mere formality. We disagree. The record clearly discloses that EBM was afforded a fair opportunity to be heard and actually offered its evidence of compliance to the extent that such evidence existed. EBM has demonstrated no deprivation of due process.

### Conclusion

The Department had jurisdiction over EBM to regulate activities where the practical function was the provision of insurance, and to oversee compliance with the Agreed Entry. The Department's findings of fact with regard to non-compliance rested upon substantial evidence. Finally, EBM was not denied due process.

Affirmed.

ROBB, J., and CRONE, J., concur.